**ORIGINAL**

**ORIGINAL**

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **GEAR WIZZARD, INC.,**<br>570 West Armory Drive<br>South Holland, IL 60473<br>(708)339-7220<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FILED**
JUN  8 2009
U.S. COURT OF
FEDERAL CLAIMS

No. 09-366 C

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

#### I. THE APPLICABLE STANDARD

Under 28 U.S.C. § 1491(b) this Court "shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation...for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement...To afford relief in such an action, the court may award any relief that the court considers proper, including declaratory and injunctive relief...[i]n any action under this subsection, the court shall review the agency's decision pursuant to the standards set forth in section 706 of title 5." Title 5 U.S.C. § 706 provides in relevant part that "[t[he reviewing court shall...hold unlawful and set aside agency action, findings, and conclusions found to be...arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." [*PGBA, LLC v. United States*, 389 F.3d 1219, 1224 (Fed.Cir. 2004).

The grant of a Preliminary Injunction rests on a showing: 1) that the movant is likely to succeed on the merits at trial; 2) that it will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the movant's favor; and 4) that a preliminary injunction will not be contrary to the public interest. [*Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12, 107 S.Ct. 1396, 1404 n.12, 94 L.Ed.2d 542 (1987); *PGBA, LLC v. United States*, supra., at 1228-29]

## II. THE MERITS

As demonstrated by the attached Appendix, there is no genuine issue regarding the following merits.

During the previous sixteen months, the Government has issued more than five Solicitations for NSN 2520-01-136-8717 ["NSN-8717"], each of which included the invitation that an "Alternate Offeror is required to provide a complete data package...for evaluation" to substitute for the specified source. [App. 1-12].[1] NSN-8717 is a shifter fork in a military truck that has been used for many years and is being phased out by the Marines and the Air Force and, possibly, other services. [App. 45].

Responding to the Government's invitations, GWI submitted and resubmitted its Alternate Item Qualification Package on November 9, 2007, and on February 10, 2008, for its GWI P/N 117-3296-C-107 ["GWI-C-107"] as an equal item for NSN-8717. [App. 2]. On March 7, 2008, GWI revised and resubmitted its Qualification Package. [App. 14-16]

The Army Tank Automotive Command, Engineering Support Authority ["TACOM-ESA"] was and is the responsible official for evaluating GWI's Qualification Package for its

---

[1] During this period, Defendant also awarded four contracts/orders to entities other than GWI, without GWI having the opportunity to protest. [App. 13].

P/N GWI-C-107 to be a substitute for NSN-8717. The TACOM-ESA was and is Mr. John Deja. On March 20, 2008, the TACOM-ESA recorded the preliminary results of his evaluation of GWI's Qualification Package for its P/N GWI-C-107 and noted that "[q]ualifying the GWI shifter fork would promote competition resulting in a...cost savings" and "the GWI proposal seems to be based upon good reverse engineering rationale", but before acceptance "a trial installation of a production representative part would be required within a transfer case to assure their part fits and functions properly, with the trial installation witnessed by a government quality inspector." [App. 20]. Then, on March 25, 2008, the TACOM-ESA completed the review of GWI's Qualification Package for its P/N GWI-C-107, indicating some comments to be addressed on GWI's drawing, and, again, noted that GWI "followed a logical approach in their reverse engineering effort," and that qualification required "[a] trial installation of a production representative part...within a transfer case to assure their part fits and functions properly, with the trial installation witnessed by a government quality inspector." [App. 19].

On April 14, 2008, GWI provided a detailed response to the TACOM-ESA comments on its Qualification Package for its P/N GWI-C-107. [App. 17-18].

On June 16, 2008, DSCC awarded a contract to an entity other than GWI for NSN-8717 in Solicitation-0048 at a higher unit price than GWI's offer. [App. 13]. From June, 2008, through February, 2009, DSCC awarded contracts to entities other than GWI for NSN-8717 at unit prices that were substantially higher than that offered by GWI. [App. 13].

From April, 2008, GWI continued to seek approval of its Qualification Package for its P/N GWI-C-107 and, in response to TACOM ESA's requests supplemented its submission with complete inspection and metallurgical analysis reports on its production

samples and an explanation of the Specification grade of the iron used in GWI's parts. [App. 17-41].

To date, the Government has not provided directions for the performance of "[a] trial installation of a production representative part...within a transfer case to assure their part fits and functions properly, with the trial installation witnessed by a government quality inspector" in order to qualify GWI's P/N GWI-C-107. As of April 13, 2009, GWI had expended more than $10,000.00 on its Qualification Package for its P/N GWI-C-107. [App. 27].

On April 9, 2009, DSCC issued Request for Quotation No. SPM7L109TD199 ["RFQ-199"] and on April 29, 2009, issued Request for Quotation No. SPM7L109TF572 ["RFQ-572"] for NSN-8717, each of which again specified that an "Alternate Offeror is required to provide a complete data package...for evaluation" to substitute for the specified source "Axletech International, Inc. ["Axletech"]...P/N 3296-C-107". [App. 5-8]. GWI submitted offers on both RFQ-199 and RFQ-572 to supply its P/N GWI-C-107 and again noted its previous submission of its complete qualification package for GWI's P/N GWI-C-107. GWI also submitted Protests [B-401305 & B-401328] to the General Accountability Office ["GAO"] against any award on RFQ-199 and RFQ-572 based on the failure/refusal of the Government to properly complete the evaluation and approval of the qualification of GWI's P/N GWI-C-107. DSCC then avoided the GAO issuing decisions on GWI's Protests by cancelling RFQ-199 and RFQ-572 on May 19, 2009. [App. 42-43].

Then on May 28, 2009, DSCC reissued the previous RFQs as SPM7L309T2193 ["RFQ-2193"] and SPM7L309T2194 ["RFQ-2194"] for NSN-8717 with an opening date of June 11, 2009, each of which again specified that an "Alternate Offeror is required to

provide a complete data package...for evaluation" to substitute for the specified source that DSCC had changed to "Meritor Heavy Vehicle Systems, LLC, P/N 3296C-101." There was no mention of GWI's qualification to supply the parts for RFQ-2193 and RFQ-2194.[App. 9-12].

In a letter dated "May 22, 2009", but mailed on May 26, 2009, a DSCC employee, Mr. Francis J. Belill, sought to advise GWI that its Qualification Package for its P/N GWI-C-107 was not acceptable. [App. 44-47]. Mr. Belill was not the authorized TACOM-ESA for evaluating GWI's Qualification Package for its P/N GWI-C-107. Mr. Belill did not provide any explanation for the Government's failure/refusal for more than twelve months to advise GWI of any questions with regard to its Qualification Package for its P/N GWI-C-107. Mr. Belill provided no basis for any authority to evaluate GWI's Qualification Package for its P/N GWI-C-107 nor for substituting his allegations for the TACOM-ESA.

Every reason given by Mr. Belill for failing/refusing to accept GWI's Qualification Package for its P/N GWI-C-107 merely involved editorial matters and, in any event, had been answered or resolved by GWI's prior submissions. [App. 48-55].

One day after issuing RFQ-2194, DSCC awarded Contract/Order No. SPM7L3-09-M-1305 ["Order-1305"] to Consolidated Truck Parts, Inc., thus foreclosing GWI's ability to submit an offer or protest before the scheduled closing date of June 11, 2009. [App. 56].

### III. A PRELIMINARY INJUNCTION IS WARRANTED

#### A. THE LIKELIHOOD OF SUCCESS

The Competition in Contracting Act, 10 U.S.C. § 2304 (a) mandates that the Defendant must obtain full and open competition in its procurements. [See, also, Federal

Acquisition Regulations ("FAR"), Subpart 6.1 – "Full and Open Competition"]. It is axiomatic that if full and open competition is not utilized then the head of the responsible agency must execute a Justification and Approval ["J&A"], but the J&A is not valid if it is based on a failure to exercise advance planning to develop competitive sources. [*Cf., Signals & Systems, Inc.*, B-2188107, Sept. 21, 2001, 2001 CPD ¶ 168, at 9, *Worldwide Language Resources, Inc.; SOS Int'l Ltd.*, kB-296984 *et al.*, Nov. 14, 2005, 2005 CPD ¶ 206, at 12; also *VSE Corporation; Johnson Controls World Services, Inc.*, B-290452.3, .4, & .5, May 23, 2005].

The Federal Acquisition Regulations are clear in requiring the Defendant to be proactive in qualifying prospective suppliers. [FAR Subpart 9.2–"Qualification Requirements"]. The "head of the agency" must justify and establish any qualification requirement in advance of a procurement, such a qualification requirement must be defined and published in any situation, as here, were "fewer than two manufacturers" are considered qualified, and the Government must "bear the cost of conducting...specified testing and evaluation...for a small business." [FAR §§ 9.202 & 9.204]. Further, whenever a qualification requirement is considered necessary, the agency must provide an opportunity for and urge prospective manufacturers to demonstrate their qualification while allowing "sufficient time for qualification before award." [FAR § 9.205].

Here, the Defendant's Agency repeatedly invited GWI to undertake the time and expense to submit and support its alternate item qualification package, but, notwithstanding the mandate of the Regulations to proactively provide an opportunity to qualify, the Agency's invitatiosn constituted empty promises, violating the implied contract of fully and

fairly considering GWI's proposals, and blatantly violating the Regulations mandating a full opportunity to qualify its part. For more than sixteen months, the Agency ignored the authorized TACOM-ESA's requirement for "[a] trial installation of a production representative part...within a transfer case to assure their part fits and functions properly, with the trial installation witnessed by a government quality inspector" in order to qualify GWI's P/N GWI-C-107.

Furthermore, even if the Agency head executed the mandated Justification and Approval to restrict competition, of which there is no evidence, that would be invalid inasmuch as the restriction of competition is the result of the Defendant's own unlawful and arbitrary inaction in completing the processing of GWI's part qualification package.

The merits amply demonstrate the Defendant's arbitrary, capricious, grossly erroneous, and unlawful actions.

### B. IRREPARABLE HARM

Relying on the Defendant's false invitations and promise, GWI has already expended more than $10,000 in its qualification effort. Ignoring its obligations under statutes and regulations, the Defendant led GWI on what has proved to be a futile effort to obtain a full and fair evaluation of its qualifications. At every instance, the Defendant's Agency disregarded GWI and made awards to others, including the most recent award of Order-1305, one day after RFQ-2194 was issued so that GWI had no chance to do anything other than file this action. There is no conceivable situation where GWI could suffer any greater irreparable harm than allowing the Agency to continue on its tack of disregarding GWI's qualifications and statutory/regulatory rights while immediately awarding contracts to and allowing performance by other entities.

### C. THE BALANCE OF HARDSHIPS

The opening date for RFQs-2193 and 2194 is not until June 11, 2009 [notwithstanding the Agency's precipitous award of Order-1305 one day after RFQ-2194 was issued]. For more than sixteen months, GWI has suffered the hardship of devoting time and expense to chasing the Agency's false invitations and promise of qualifying its part. On the other hand, the Agency has ignored GWI and made awards to others at higher prices and without justification. What hardship would the Defendant suffer in the event of a preliminary injunction? In the face of the Defendant's statutory and regulatory violations and arbitrary, capricious, and grossly erroneous conduct for these many months, holding up the precipitous award of Order-1305 and further awards for a brief time to resolve this matter shows no hardship for the Agency at all.

### D. THE PUBLIC INTEREST

The public interest is in seeing that the Defendant complies with the law. Here, there is no question but that the Defendant's Agency has violated the law and arbitrarily, irrationally, and erroneously barred GWI from competing for more than sixteen months. It is submitted that the public interest is not in the Government paying high prices for truck parts, when a small business has spent time and money attempting to follow the Agency's false invitations and promise to qualify its parts. This case stands for the proposition that the public does not want to continue the military-industrial complex where the agency awards contracts to whomever it wishes at whatever price its desired contractor wants, while ignoring the small competitor who offers to qualify its part at a lower price.

## IV. **CONCLUSION**

There are few cases that come along with a clear conclusion. Here, the conclusion cannot be more clear. GWI tried for more than sixteen months to conform to the false invitations and empty promise in the Defendant's solicitations to qualify its part. Even though the responsible authority found that qualification approval rested on "[a] trial installation of a production representative part...within a transfer case to assure their part fits and functions properly, with the trial installation witnessed by a government quality inspector," that installation inspection has not taken place, but the Agency has made multiple awards to others while ignoring GWI. A preliminary injunction could not be more appropriate to enjoin any award on RFQ-2193, RFQ-2194, or any other Solicitation issued for NSN-8717 or peformance on the suddenly awarded Order-1305.

Date: _____June 5, 2009_____   Respectfully submitted,

/s/ Charles E. Raley

Charles E. Raley
54 Governors Road
Hilton Head Island, SC 29928
(843)363-6634
FAX: (843)363-6635
e-mail: craley@hargray.com

Counsel for Plaintiff,
Gear Wizzard, Inc.